15219

## STATE v. BLACKWELL

(13 S. E. (2d), 433)

*Mr. C. Yates Brown,* for appellant,

*Messrs. J. Allen Lambright, County Solicitor,* and *John W. Crews,* for appellant,

314

February 28, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The defendant was convicted of practicing embalming without having first obtained a license from the State Board, under Sections 5268 and 5270 of the Code of 1932.

It appears that one Simpson Cecil Belcher was injured in an automobile wreck on May 26, 1940, after which he was taken to the Mary Black Clinic in the City of Spartanburg, where he died on the same day. The brother of the deceased, Mr. J. F. Belcher, arranged with the defendant to convey the body of the deceased to Chesnee, where Zeno Blackwell, Sr., the father of the defendant, conducted a funeral home. The letterhead of this business advertised not only furniture, stoves, ranges, and radios, but carried also the statement, "Special Attention Given to My Undertaking Department." While riding in the ambulance from Spartanburg to Chesnee, the defendant, Zeno Blackwell, Jr., upon the request of Mr. J. F. Belcher, agreed to embalm the body and prepare it for burial, and when they reached Chesnee he took the body to his father's undertaking establishment and there embalmed it, using what is known as the arterial treatment.

The testimony shows beyond question that the defendant had no license to practice embalming. The sole question raised by the appeal has to do with the construction of the statutes under which he was convicted.

Section 5268 reads as follows: "On and after the first day of January, 1913, it shall be unlawful for any person not a licensed embalmer, licensed either under the provisions of this article or licensed previously ·to the passage hereof by the State Board, to practice or pretend to practice embalming, either by arterial or cavity treatment."

Section 5270, as amended by Act No. 825 of the Acts of 1940, page 1694, provides the penalty, and reads in part as follows: "Any person who shall practice or hold himself or herself out as practicing embalming, without having complied with the provisions of this article,   *   *   *."

Appellant contends that it was incumbent upon the State to prove, not merely one act of embalming, but that the State should have gone further and proved that the appellant customarily and habitually embalmed bodies. The argument is based upon various definitions of the word "practice", taken from the dictionaries. The word is susceptible of a great many meanings, dependent upon the nature of its use. "Practice", when used as a verb, is defined in Webster's International Dictionary as follows: "To do, perform, carry on, act or exercise." It also carries the meaning of customarily performing acts. But where the proper construction of a statute indicates that it applies to a single act, the dictionary definition of the word as meaning a continued and habitual performance of acts cannot be taken into account.

It has been held with reference to physicians and surgeons that practicing medicine or surgery does not mean continued or habitual professional acts, but, as the object of a restrictive statute is a protection of the public, and as a member of the public is endangered by one act of an unqualified practitioner, so a single act may be practicing. *Collins v. Texas*, 223 U. S., 288, 32 S. Ct., 286, 56 L. Ed., 439; 21 R. C. L., Sec. 16, page 369. The prime object of this law regulating the practice of embalming is the protection of the public from ignorance and imposture, and its prohibition applies to all persons who have not shown themselves to be possessed of the qualifications required by Section 5266 of the Code. The person performing the act or practice is the person whom the statute seeks to regulate. And a single act of embalming is as much a violation of the law as repeated acts of practice.

By virtue of the legislative definition, to embalm, "either by arterial or cavity treatment", is to practice embalming. It is not necessary that this be done frequently, continuously, or habitually. Under the statute, one isolated instance is sufficient. If the statute could be construed as desired by the appellant, then the veriest tyro in any community in South Carolina could perform the act of embalming at least once, or perhaps several times, without running counter to the law. In our opinion it was never the intention of the Legislature to require the prosecution to show that an unlicensed person, before conviction can be had, was an habitual offender. We think that the word "practice", as used in the statutes referred to, means the exercise or performance of even one act of embalming.

It is suggested that as the defendant received no compensation, his conviction is improper. It is only necessary to say that compensation is not an essential element of the offense. Nor do the facts show, even if it constituted a defense, that any emergency existed. The dead body of Simpson Cecil Belcher was transported from the City of Spartanburg, where many licensed embalmers are to be found, to Chesnee, in an ambulance driven by the defendant, where by agreement he performed the act of embalming.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MESSRS. ACTING ASSOCIATE JUSTICES L. D. LIDE and J. STROM THURMOND concur.